UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MPS MONITOR S.R.L., NICOLA DE
BLASI, and VALSOFT CORPORATION,
INC.,

    Plaintiffs and Counter-Defendants,

v.

OBERON AMERICAS, INC., and DENIS
DRENI,

    Defendants, Counter-Plaintiff, and
    Third-Party Plaintiff,

v.

JEFFREY STANISLAS SWANN
MESSUD, and ECOPRINTQ, INC.,

    Third-Party Defendants.

_____/

Case No.: 2:24-cv-00409-JLB-KCD

## ORDER

This dispute arose from the fallout surrounding a software distribution agreement between Plaintiff MPS Monitor S.R.L. and Defendant Oberon Americas, Inc. Plaintiffs MPS Monitor S.R.L. ("MPS"), Nicola De Blasi ("De Blasi"), and Valsoft Corporation, Inc. ("Valsoft") (collectively, the "Plaintiffs" and "Counter-Defendants"). MPS filed a Complaint (Doc. 1) alleging trademark infringement, unfair competition, defamation, and tortious interference with business relationships on March 2, 2024. Defendants Oberon Americas, Inc. ("Oberon" or

1

"Counter-Plaintiff") and Denis Dreni ("Dreni") (collectively, the "Defendants") filed their Answer and Affirmative Defenses (Doc. 29) on July 8, 2024.

Defendant Oberon included counterclaims against Plaintiffs in its filing. (Doc. 29). Before the Court is MPS's Motion to Dismiss Oberon's counterclaims (Doc. 39).

After careful review, the Court concludes that MPS's Motion to Dismiss Oberon's counterclaims (Doc. 39) under Federal Rule of Civil Procedure 12(b)(3) is due to be **DENIED**.

## BACKGROUND[1]

This dispute arose from the fallout surrounding a distribution agreement between Plaintiff MPS and Defendant Oberon (the "Agreement").[2] (Doc. 1 at ¶ 1; Doc. 29 at 2, 34). MPS owns a "software as service" cloud platform for monitoring and managing printing devices ("MPS Monitor"). (Doc. 1 at ¶ 2; Doc. 29 at ¶¶ 28–30). The Agreement, dated January 1, 2020, provided Oberon with a limited license to use MPS's trademarks related to the MPS Monitor software. (Doc. 1 at ¶ 2; Doc. 29 at ¶¶ 7, 46–47).

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in Oberon's filing pleading its counterclaims (Doc. 29).
[2] The parties are reminded that it is their obligation to provide the Court with record citations to support their arguments. Repeated citations to the original Complaint (Doc. 1), which is not the operative complaint subject to this motion to dismiss, and failure to attach the Agreement to the operative complaint or other pleading in response thereto drains the Court's limited resources and hamper the Court's ability to adjudicate motions in a timely fashion. Any further deficiencies will result in the Court striking the parties' filings.

2

The Agreement contained a forum-selection clause that provided, "With respect to all disputes arising out of or related to this Agreement, contractual, precontractual and extra contractual nature, the Court of Milan shall have the jurisdiction." (Doc. 1-4 at § 11).

In 2019, MPS partnered with HP, Inc. ("HP") to create an independently branded version of MPS Monitor called HP SDS Action Center ("HP SDS"). (Doc. 1 at ¶ 32; Doc. 29 at ¶¶ 6, 117). As part of its Agreement with MPS, Oberon provided support for the HP SDS customer base. (Doc. 1 at ¶ 32; Doc. 29 at ¶¶ 6, 117–18). Through its support of the HP SDS customer base, Oberon gained access to HP's customer data. (*Id.*). MPS alleges that HP eventually submitted multiple complaints that Oberon's support services were delayed and inadequate. (Doc. 1 at ¶ 32). In response to these complaints, MPS notified Oberon that Oberon would no longer provide technical support services to HP and its customer base on behalf of MPS. (Doc. 1 at ¶ 32; Doc. 29 at ¶ 32; *see* Doc. 1-5). MPS conveyed this information to Oberon via an official notice sent on February 18, 2022. (*Id.*).

On May 25, 2023, Oberon sent a promotional email to an undisclosed recipient list titled, "Moving from HP SDS to Monitor" with a "special offer" to "transfer [customers'] data and devices from [HP SDS] to MPS Monitor" for free. (Doc. 1 at ¶ 33; Doc. 29 at ¶ 33; *see* Doc. 1-6). MPS claims that Oberon used HP's confidential information to solicit and target HP users to use MPS Monitor, noting that an HP employee whose email was registered on the HP SDS customer list received the email. (Doc. 1 at ¶ 33).

On July 10, 2023, MPS sent Oberon a letter entitled "Re: Termination Of The MPS Software As A Service Agreement." (Doc. 1 ¶ 34; Doc. 29 at ¶ 34; *see* Doc. 1-7). MPS claims that Oberon's improper use of HP's confidential information was a direct and material breach of sections 3.1(ix)[3] and 7.2[4] of the Agreement that could not be remedied, and that this breach led MPS to terminate the Agreement through the letter. (Doc. 1 at ¶ 34; *see* Doc. 1-7). Oberon denies that the letter validly terminated the Agreement. (Doc. 29 at ¶ 34). As a result of the soured relationship, Oberon filed two unsuccessful lawsuits in Milan, Italy. (*See* Docs. 1-10, 1-18). It has now filed its third, but this time in this Court. Specifically, Oberon filed counterclaims against MPS for breach of contract (Count I), tortious interference with existing business or contractual relationships (Count III), tortious interference with prospective business relationships (Count IV), civil conspiracy (Count V), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count VII). (Doc. 29 at ¶¶ 154–62, 170–88, 194–205). MPS now moves to dismiss Oberon's counterclaims. (Doc. 39).

## DISCUSSION

MPS, in its Motion to Dismiss Oberon's Counterclaims for Improper Venue, argues that Oberon's counterclaims are subject to a forum-selection clause within the Agreement, making venue improper in this District and warranting dismissal

---

[3] Section 3.1(ix) provides that Oberon agreed "not to utilize the Proprietary Information disclosed by the Party for any purpose whatsoever other than as expressly contemplated by [the] Agreement."
[4] Section 7.2 required Oberon to "hold the Proprietary Information disclosed by each Party in confidence and not to, directly or indirectly . . . utilize the Proprietary Information disclosed by the Party for any purpose whatsoever other than as expressly contemplated by [the] Agreement."

4

under Federal Rule of Civil Procedure 12(b)(3). (Doc. 39 at 5–6). The forum-selection clause in the Agreement states that "[w]ith respect to all disputes arising out of or related to this Agreement, contractual, precontractual and extra contractual nature, the Court of Milan shall have the jurisdiction." (Doc. 1-4 at § 11; Doc. 29 at ¶ 61; Doc. 39 at 3; Doc. 49 at 6).

MPS and Oberon agree that the Agreement contains a forum-selection clause, providing that the Court of Milan, Italy, is the desired judicial forum. (Doc. 29 at ¶ 61; Doc. 39 at 3; Doc. 49 at 6). Oberon argues that MPS's Motion to Dismiss improperly invoked Federal Rule of Civil Procedure 12(b)(3) rather than *forum non conveniens* and should be rejected on this basis alone. (Doc. 49 at 4–5). Oberon further argues that, even if the Court were to construe MPS's motion as a *forum non conveniens* motion, such motion should still be denied because the Agreement's forum-selection clause is permissive rather than mandatory (Doc. 49 at 5–8) and that, in any case, MPS waived any right to enforce the forum-selection clause (*id.* at 8–12) by asserting the claims made in its Complaint (Doc. 1).

I. **Appropriate procedural vehicle to enforce a forum-selection clause**

"Rule 12(b)(3) provides for dismissal only when venue is 'improper' under the applicable federal venue statute, and . . . a forum-selection clause cannot render venue improper when the action meets the requirements of the relevant venue statute." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1296 (11th Cir. 2021) (citing *A. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013)). "[V]enue is proper so long as the requirements of [28 U.S.C.] §

5

1391(b) are met, irrespective of any forum-selection clause." *A. Marine Const. Co.*, 571 U.S. at 57.

MPS does not allege venue to be improper under 28 U.S.C. § 1391(b). (*See* Doc. 39). Thus, its invocation of Rule 12(b)(3) is misguided. *See Don't Look Media LLC*, 999 F.3d at 1295 ("[I]t was procedurally improper for the defendants to seek to enforce the forum-selection clauses by means of a Rule 12(b)(3) motion to dismiss for improper venue rather than by filing a motion to dismiss for *forum non conveniens*.").

There is no question that this Court has jurisdiction to hear this case in this venue. Thus, MPS's motion to dismiss on Rule 12(b)(3) grounds is denied.

## II. Whether the Court will construe MPS's Motion to Dismiss as a *forum non conveniens* motion

Whether Oberon's counterclaims should be dismissed under the doctrine of *forum non conveniens* is another question. The Court does not have sufficient briefing on this issue to properly decide this question.

*Forum non conveniens* is "a flexible, common law doctrine that provides a district court with inherent power to decline to hear a case in which there is proper jurisdiction and venue." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1085 (11th Cir. 2024). A party seeking dismissal through *forum non conveniens* must establish that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (citation omitted).

6

In the "typical case—i.e., one not involving a forum-selection clause—a district court considering a *forum non conveniens* motion must evaluate both the convenience of the parties (the private-interest factors) and various public interest considerations." *Usme*, 106 F.4th at 1085–86. The private-interest factors include "the parties' relative ease of access to sources of proof, access to witnesses, ability to compel testimony, the possibility of viewing the premises, and the enforceability of a judgment." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1338 (11th Cir. 2020). The public-interest factors include "a sovereign's interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Id.*

Under the traditional *forum non conveniens* analysis, "a plaintiff's choice of forum should rarely be disturbed." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981). When there is a valid and applicable forum-selection clause, however, "[t]he calculus changes[.]" *Atl. Marine*, 571 U.S. at 63. In such cases, the *forum non conveniens* analysis is "modified" in three significant ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that dismissal for *forum non conveniens* is unwarranted. Second, a court should not consider arguments about the parties' private interests and must deem the private-interest factors to weigh entirely in favor of the preselected forum. Third, a court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right, and this in turn may affect the public-interest considerations.

7

*Usme*, 106 F.4th at 1086 (internal quotation marks and citations omitted). Consequently, the Supreme Court has said that "the existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis." *Id.* (citing *A. Marine Const. Co., Inc.*, 571 U.S. at 62–64; *see also GDG Acquisitions, LLC v. Government of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (noting that "an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). The Agreement's forum-selection clause must be enforceable to modify the *forum non conveniens* analysis. *See Atl. Marine*, 571 U.S. at 63 (specifying that a *valid* forum-selection clause impacts the *forum non conveniens* analysis because it represents the parties' agreement as to the most proper forum); *GDG Acquisitions, LLC*, 749 F.3d at 1028 (noting that "an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis).

In its Motion to Dismiss, MPS does not mention the doctrine of *forum non conveniens*, much less analyze its application to this case. While MPS does discuss the enforceability of the Agreement's forum-selection clause—which can be dispositive in a *forum non conveniens* analysis—the enforceability of the Agreement's forum selection clause is only dispositive if the clause is found to be enforceable. *See GDG Acquisitions, LLC*, 749 F.3d at 1028 ("[A]n *enforceable* forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). MPS did not brief how the *forum non conveniens* analysis would proceed in the alternative. Against this backdrop, the Court concludes that MPS's motion

8

does not sufficiently raise this argument even if MPS intended to raise it.  **In all events, MPS's Motion to Dismiss Oberon's counterclaims (Doc. 39) under Rule 12(b)(3) is due to be DENIED.**

That said, the Court will provide MPS leave to file a second motion to dismiss to allow it an opportunity to brief a *forum non conveniens* argument.  The Court is mindful of litigation expenses and has not provided such leave without careful consideration.

## CONCLUSION

For the reasons set forth above, MPS's Motion to Dismiss Oberon's counterclaims under Federal Rule of Civil Procedure 12(b)(3) (Doc. 39) is **DENIED.**

MPS may have leave to file a second motion to dismiss should it wish to squarely raise and fully brief a *forum non conveniens* argument, which shall be due on or before March 27, 2025.

**ORDERED** at Fort Myers, Florida on March 13, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE