UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MPS MONITOR S.R.L., NICOLA DE
BLASI, and VALSOFT CORPORATION,
INC.,

    Plaintiffs and Counter-Defendants,

v.

OBERON AMERICAS, INC., and DENIS
DRENI,

    Defendants, Counter-Plaintiff, and
    Third-Party Plaintiff,

v.

JEFFREY STANISLAS SWANN
MESSUD, and ECOPRINTQ, INC.,

    Third-Party Defendants.
_____/

Case No.: 2:24-cv-00409-JLB-KCD

## **ORDER**

This dispute arose from the fallout surrounding a software distribution agreement between Plaintiff MPS Monitor S.R.L. and Defendant Oberon Americas, Inc.  Plaintiffs MPS Monitor S.R.L. ("MPS"), Nicola De Blasi ("De Blasi"), and Valsoft Corporation, Inc. ("Valsoft") (collectively, the "Plaintiffs") filed a Complaint (Doc. 1) alleging trademark infringement, unfair competition, defamation, and tortious interference with business relationships on March 2, 2024.  Defendants Oberon Americas, Inc. ("Oberon" or "Third-Party Plaintiff") and Denis Dreni

1

("Dreni") (collectively, the "Defendants") filed their Answer and Affirmative Defenses (Doc. 29) on July 8, 2024.

Defendant Oberon also filed a Third-Party Complaint (Doc. 29) against Jeffrey Stanislas Swann Messud ("Messud") and Ecoprintq, Inc. ("Ecoprintq") (together, the "Third-Party Defendants") on July 8, 2024. Third-party defendant Ecoprintq filed an Answer and Affirmative Defenses to Oberon's third-party claims (Doc. 40) on August 12, 2024. Third-party defendant Messud filed a Motion to Dismiss the Third-Party Complaint (Doc. 42) on August 16, 2024. Messud's Motion to Dismiss the Third-Party Complaint is before the Court today.

After a careful review of the parties' briefings and the record, the Court concludes that third-party defendant Messud's Motion to Dismiss the Third-Party Complaint (Doc. 42) is due to be **GRANTED**.

## BACKGROUND[1]

This dispute arose from the fallout surrounding a software distribution agreement between Plaintiff MPS and Defendant Oberon (the "Agreement"). (Doc. 1 at ¶ 1; Doc. 29 at 2, 34). MPS owns a "software as service" cloud platform for monitoring and managing printing devices ("MPS Monitor"). (Doc. 1 at ¶ 2; Doc. 29 at ¶ 28–30). The Agreement, dated January 1, 2020, provided Oberon with a

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in Oberon's Third-Party Complaint (Doc. 29).

2

limited license to use MPS's trademarks related to the MPS Monitor software. (Doc. 1 at ¶ 2; Doc. 29 at ¶ 7, 46–47).[2]

The relationship between Oberon and MPS quickly began to deteriorate. On July 10, 2023, MPS sent Oberon a letter entitled "Re: Termination Of The MPS Software As A Service Agreement." (Doc. 1 ¶ 34; Doc. 29 at ¶ 34; *see* Doc. 1-7). MPS claimed that Oberon committed a material breach of the Agreement that could not be remedied, leading MPS to terminate the Agreement through the letter. (Doc. 1 at ¶ 34; *see* Doc. 1-7). Oberon denied that the letter validly terminated the Agreement (Doc. 29 at ¶ 34), but despite this, MPS terminated Oberon's platform and software access (*Id.* at ¶ 115).

On the same day, MPS sent a notice to Oberon Americas' customers announcing MPS's new presence in the U.S. market, notifying them of the termination of the relationship between MPS and Oberon and asserting that Oberon was no longer authorized to provide and/or bill for any licenses or softwares related to the MPS Monitor platform. (*Id.* at ¶¶ 119–20). MPS then began operating and distributing the Software in the Americas, which had previously been Oberon's market. (*Id.* at ¶ 122).

Throughout these events, Dreni, as Chief Executive Officer of Oberon (*Id.* at ¶ 12), corresponded with Messud, who was Vice President and Managing Director of

---

[2] The original parties to the Agreement were Oberon and Oberon Service, S.R.L. ("Oberon Service"). Oberon Service is a sister company of MPS and is unaffiliated with Oberon Americas, Inc. (Doc. 1 at n.1). MPS was later assigned all rights, duties, and obligations of Oberon Service under the Agreement. (See Doc. 1 at ¶ 29; Doc. 29 at ¶¶ 45–46, 79).

Valsoft[3] (*Id.* at ¶ 19). Dreni and Messud discussed the Agreement over the phone on September 27, 2022. (Doc. 29 at ¶ 88). Dreni also traveled to Milan, Italy, to meet with representatives of Valsoft and MPS, including Messud, on December 2, 2022. (*Id.* at ¶¶ 97–98). Oberon also alleges that Messud courted its customers in furtherance of a conspiracy to interfere with Oberon's business relationships, but it does not specify when this occurred. (*Id.* at ¶¶ 185–86).

Oberon alleges that the aforementioned conduct disrupted its relationships with customers and business partners. (*Id.* at ¶ 130). In response, Oberon filed a Third-Party Complaint (Doc. 29) against the Third-Party Defendants, including Messud. Messud moved to dismiss Oberon's Third-Party Complaint against him. (Doc. 42).

## DISCUSSION

Third-party defendant Messud, in his Motion to Dismiss Oberon's third-party complaint (Doc. 42), argues that Oberon's third-party complaint (Doc. 29) should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or, in the alternative, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[4]

### I. Whether the Third-Party Complaint should be dismissed for lack of personal jurisdiction over Messud

"A federal court sitting in diversity undertakes a two-step inquiry in

---

[3] Valsoft owned MPS. (Doc. 29 at ¶ 76).
[4] Because the Court concludes that the Third-Party Complaint should be dismissed for lack of personal jurisdiction, it does not reach Messud's arguments for failure to state a claim.

4

determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363–64 (11th Cir. 2021) (quoting *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257–58 (11th Cir. 2010)).

As the third-party plaintiff, Oberon bears the burden of establishing personal jurisdiction over Messud. *Id.* at 1364. While Oberon must eventually establish personal jurisdiction by a preponderance of the evidence by the close of evidence, the district court has discretion to either impose the preponderance-of-the-evidence standard now or wait until a later stage of these proceedings. *Id.* The Court has decided to reserve its imposition of a preponderance-of-the-evidence standard at this time. *Id.* Thus, it reviews Messud's Motion to Dismiss (Doc. 42) under a prima facie standard and must decide the motion based solely on the complaint and affidavits. *AcryliCon USA, LLC*, 985 F.3d at 1364.

For Oberon to satisfy its prima facie burden, it must present enough evidence to withstand a motion for judgment as a matter of law. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). The Court must accept as true all unchallenged facts in Oberon's third-party complaint and then consider all affidavit evidence provided by the parties. *AcryliCon USA, LLC*, 985 F.3d at 1364. To the extent that Oberon's third-party complaint and supporting evidence conflict with Messud's affidavits, the Court must construe all reasonable

5

inferences in favor of Oberon. *Id.* Notably, whether Oberon satisfies the prima facie requirement is purely a legal question, and the Court will not weigh evidence or make credibility determinations. *Id.* at 1364–65.

### A. Personal jurisdiction under Florida's Long-Arm Statute

Florida courts conduct a two-part inquiry to determine whether personal jurisdiction exists under Florida's long-arm statute. *See, e.g.*, *Wendt v. Horowitz*, 822 So. 2d 1252, 1257 (Fla. 2002). First, they ask whether the factual allegations bring the plaintiff's action within the ambit of the long-arm statute, and second, if the facts implicate § 48.193(1), they ask whether those facts demonstrate sufficient "minimum contacts" to satisfy due process requirements. *Id.*

Oberon pleads that three specific provisions of Florida's long-arm statute apply to Messud:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.
>
> . . .
>
> 6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

6

> a. The defendant was engaged in solicitation or service activities within this state; or
>
> b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

Fla. Stat. § 48.193(1)(a)(1), (a)(2), (a)(6).  (Doc. 29 at ¶ 24).

Throughout its third-party complaint, Oberon repeatedly refers to Messud as one of the "MPS Conspirators."  (Doc. 29 at ¶ 80).  Many of Oberon's allegations are made against the MPS Conspirators collectively.  (*See, e.g.*, *id.* at ¶¶ 82–87, 105, 108, 113–14, 122, 129–130, 135, 145, 150–52, 186).  However, Oberon specifically attributes conduct to Messud on only a few occasions.  First, Oberon asserts that Messud had a phone call with Dreni while Dreni was physically located in Florida, and that during this call, Messud threatened to cancel the Agreement.  (*Id.* at ¶¶ 88–89, Doc. 55-1 at ¶ 10).  Second, Oberon asserts that Dreni traveled to Milan, Italy, to meet with representatives of Valsoft and MPS, including Messud.  (*Id.* at ¶ 97).  Third, Oberon asserts that Messud communicated with several of Oberon's Florida-based customers.  (*Id.* at ¶ 186; Doc. 55-1 at ¶ 11).  Oberon argues that this conduct placed Messud within the reach of Florida's long-arm statute.

      **i.**     **Section 48.193(1)(a)(1)**

Section 48.193(1)(a)(1) of Florida's long-arm statute exercises personal jurisdiction over persons who "[o]perat[e], conduct[], engag[e] in, or carry[] on a business or business venture in [Florida] or hav[e] an office or agency in [Florida]."  Fla. Stat. § 48.193(1)(a)(1).  Although a corporation "may be subject to jurisdiction

7

when it transacts business through its agents operating in the forum state," agents of a corporation are not individually subject to the state's long-arm statute "unless those agents transact business on their own account in the state, as opposed to engaging in business as representatives of the corporation." *Sculptchair, Inc. v. Cent. Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996) (finding that defendants' strictly corporate acts did not render them individually subject to Florida's long-arm statute for carrying on a business of business venture) (quoting *Excel Handbag Co., Inc. v. Edison Bros. Stores, Inc.*, 428 So. 2d 348, 350 (Fla. 3d DCA 1983).

Oberon did not plead that Messud transacted business on his own account in Florida, as opposed to engaging in business as a representative of MPS. In the paragraph in which Oberon discusses the phone call between Messud and Dreni, Oberon refers to Messud as a "Valsoft representative." (Doc. 29 at ¶ 88). In later paragraphs describing the phone call, Oberon states that Messud spoke "on behalf of Valsoft." (*Id.* at ¶ 89). Additionally, Oberon describes Dreni's trip to Milan, Italy, as a trip "to meet with representatives of Valsoft and MPS, including Messud." (*Id.* at ¶ 97). While Oberon pleads that Messud "feigned breaches of the Agreement, threatened Oberon Americas, and courted Oberon Americas' exclusive [c]ustomers," it does not plead that Messud did so on his own account rather than as a representative of MPS. (*Id.* at ¶ 186). Even Dreni's affidavit, which notes that Messud "personally" made communications detailed in the Third-Party Complaint (Doc. 29), fails to allege that Messud did so on his own account rather than on behalf of MPS. (Doc. 55-1 at ¶¶ 10–11).

8

Messud's affidavit, on the other hand, states that he has "never possessed, maintained, or otherwise held a license to do business in . . . Florida" (Doc. 42-1 at ¶ 9), has "never solicited a business relationship with a prospective client or distributor in Florida . . . in [his] individual capacity" (*id.* at ¶ 10), has "never served any Florida clients . . . in [his] individual capacity (*id.* at ¶ 11), and has "never solicited business in Florida in [his] individual capacity (*id.* at ¶ 13).  Further, Messud's affidavit specifies that "any communication or actions of [his] related to the [Agreement] or the solicitation of any customers would have been exclusively for the benefit of [his] employer and not [his] personal benefit and would have been exclusively in [his] capacity as an officer or employee and not in [his] individual capacity." (*Id.* at ¶ 16).

"Florida's long-arm statute is to be strictly construed." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1340 (S.D. Fla. 2014), *aff'd sub nom. Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. 2015).  None of Oberon's allegations are sufficient to place Messud within the reach of section 48.193(1)(a)(1), as they do not allege that Messud transacted business on his own account in Florida.

    **ii.    Section 48.193(1)(a)(2)**

Section 48.193(1)(a)(2) of Florida's long-arm statute exercises personal jurisdiction over persons who "[c]ommit[] a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2).  However, the reach of section 48.193(1)(a)(2) is limited by the corporate shield doctrine.  Under the corporate shield doctrine, "acts performed by a

9

person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012).

Oberon's Third-Party Complaint attributes four torts to Messud: tortious interference with existing and prospective business relationships (Counts III-IV), civil conspiracy (Count V), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count VII). (Doc. 29 at ¶¶ 170–88, 194–205).

There are some circumstances in which intentional misconduct by an individual defendant constitutes an exception to the corporate shield doctrine. *See Doe v. Thompson*, 620 So. 2d 1004, 1006 n.1 (Fla. 1993) ("A corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction, however."). "Florida courts, however, have generally imposed the additional requirement that the intentional tort must have been committed for the corporate officer's personal benefit, rather than merely for the benefit of the corporation." *VIS Holdings Corp. v. Cooper*, 2007 WL 9702900, at *6 (S.D. Fla. Dec. 11, 2007). *See also Guzman v. Cruise Yacht Op Co. Ltd*, 2023 WL 2572220, at *3 (S.D. Fla. Mar. 20, 2023) (holding that the corporate shield doctrine applied to an individual defendant who committed an intentional tort because the defendant did not personally benefit from the alleged tort); *Smith v. Panera Bread*, 2009 WL 10667191, *8 (S.D. Fla. Aug. 11, 2009) (holding that "mere allegations of intentional misconduct on behalf of the employer . . . without more are not enough to avoid the corporate shield doctrine."); *Frohnhoeffer v. Pontin*, 958 So. 2d 420, 422 (Fla. 3d

DCA 2007) (holding corporate shield doctrine applied where "[a]ll of the acts alleged against the [corporate officers] . . . were acts committed by them in their corporate capacities").

While Oberon suggests in its Response (Doc. 55) that Messud "stood to personally benefit" from the alleged tortious conduct through his compensation structure, it admits that it "is not privy to Messud's exact compensation structure." (*Id.* at 17). Merely stating that it is "unlikely that [Messud] did not stand to profit directly and personally" from the alleged tortious conduct (*id.*) is insufficient to contradict Messud's affidavit declaring that "any communication or actions of [his] related to the [Agreement] or the solicitation of any customers would have been exclusively for the benefit of [his] employer and not [his] personal benefit and would have been exclusively in [his] capacity as an officer or employee and not in [his] individual capacity." (Doc. 42-1 at ¶ 16). Indeed, Oberon fails to identify any individual benefit that Messud would gain from the alleged tortious conduct, instead suggesting that benefits could potentially trickle down to Messud as an agent of MPS in a manner indistinguishable from the way such benefits would trickle down to all other agents of MPS. (Doc. 55 at 17). This is insufficient to overcome the application of the corporate shield doctrine. Thus, the corporate shield doctrine applies and shields Messud from the reach of section 48.193(1)(a)(2).

### iii.    Section 48.193(1)(a)(6)

Section 48.193(1)(a)(6) of Florida's long-arm statute exercises personal jurisdiction over persons who "[c]aus[e] injury to persons or property within

11

[Florida] arising out of an action or omission by the defendant outside [Florida]" if, at or about the time of the injury, either: (a) the defendant was engaged in solicitation or service activities within Florida, or (b) products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within Florida in the ordinary course of commerce, trade, or use.  Fla. Stat. § 48.193(1)(a)(6).

The reach of section 48.193(1)(a)(6) is also limited by the corporate shield doctrine.  *See, e.g.*, *George & Co. LLC v. Spin Master Corp*, 2018 WL 5268754, at *2 (M.D. Fla. Sept. 13, 2018) (finding that corporate shield doctrine applied and prevented the court from exercising jurisdiction under section 48.193(1)(a)(6)). Thus, as previously discussed in this Order, the corporate shield doctrine applies and shields Messud from the reach of section 48.193(1)(a)(6).

In any case, Oberon cannot establish personal jurisdiction over Messud through section 48.193(1)(a)(6) because it only alleges economic injury.  "Florida's Supreme Court has held that economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a non-resident defendant to personal jurisdiction under § 48.193(1)(a)(6)." *Courboin v. Scott*, 596 F. App'x 729, 734 (11th Cir. 2014) (citing *Aetna Life & Cas. Co. v. Therm–O–Disc, Inc.*, 511 So. 2d 992, 994 (Fla. 1987)[5]).

*- Remainder of page intentionally left blank -*

---

[5] *Aetna Life & Cas. Co.*, 511 So.2d 992, addresses Fla. Stat. § 48.193(1)(f), which later became § 48.193(1)(a)(6).

12

### B.  Personal jurisdiction under the Due Process Clause

Because Oberon fails to establish that jurisdiction is appropriate under Florida's long-arm statute, the Court need not analyze whether personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *See AcryliCon USA*, 985 F.3d at 1363–64.

### CONCLUSION

For the reasons set forth above, Messud's Motion to Dismiss the Third-Party Complaint (Doc. 42) is **GRANTED**.  The Third-Party Complaint (Doc. 29) is **DISMISSED without prejudice** as against Messud.  Although the Court has doubts whether Oberon can establish personal jurisdiction over Messud with amendments, the Court will afford Oberon leave to file an amended Third-Party Complaint.  No new claims shall be added.  Should Oberon decide to file an amended Third-Party Complaint, it shall be on or before March 27, 2025.

That said, the Court reminds counsel to carefully evaluate whether adding new facts could, in good faith, establish personal jurisdiction *prior to filing an amended third-party complaint*.

**ORDERED** at Fort Myers, Florida on March 13, 2025.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

13