UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MPS MONITOR S.R.L., NICOLA DE BLASI, and VALSOFT CORPORATION, INC.,

Plaintiffs and Counter-Defendants,

v.

OBERON AMERICAS, INC., and DENIS DERENI,

Defendants, Counter-Plaintiffs, and Third-Party Plaintiffs,

v.

ECOPRINTQ, INC.,

Third-Party Defendant,

Case No.: 2:24-cv-00409-KCD-DNF

## ORDER

Plaintiffs MPS Monitor S.R.L., Nicola De Blasi, and Valsoft Corporation, Inc. (collectively, MPS) sue Defendants Oberon Americas and Denis Dreni (collectively, Oberon) for various business torts. (Doc. 1.)[1] Oberon, in turn, has brought counterclaims against MPS. (Doc. 29.) MPS now moves to dismiss the counterclaims for *forum non conveniens*. (Doc. 66.)  For the reasons below, its motion is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Here are the relevant facts, which must be accepted as true at this stage. MPS owns a "software as a service cloud platform for monitoring and managing printing devices" known as "MPS Monitor." (Doc. 1 ¶¶ 2, 8.) MPS granted Oberon "the right to distribute MPS Monitor software services in North America, Central America, and South America." (*Id.* ¶ 29.) The parties' agreement additionally "granted Oberon a limited license to use the MPS [trademarks] in written communications and advertising related to its licensing of the MPS Monitor platform." (*Id.* ¶ 30.)

MPS terminated this agreement after Oberon used another MPS partner's confidential customer information. (*Id.* ¶¶ 32-34.) Oberon, nevertheless, continued to use MPS's trademarks "on its website, communications with customers, and other promotional materials without MPS's authorization." (*Id.* ¶ 37.) Additionally, Oberon "made numerous false statements asserting that Plaintiffs had engaged in criminal conduct" and "intentionally interfered with MPS's business relationships." (*Id.* ¶¶ 4-5.)

MPS now sues Oberon for trademark infringement, defamation, and tortious interference with its business relationships. (*Id.* ¶ 1.) Oberon brings counterclaims against MPS for breach of contract, tortious interference with business relationships, civil conspiracy, and violations of Florida's Deceptive and Unfair Practices Act. (Doc. 29 ¶¶ 154-162, 170-88, 194-205.)

MPS believes Oberon should bring its counterclaims in Italy given their agreement's forum-selection clause. That clause provides, "With respect to all disputes arising out of or related to this Agreement, contractual, pre-contractual and extra contractual nature, the Court of Milan shall have the jurisdiction." (Doc. 66-1 at 22.) Relying on the forum-selection clause, MPS moves to dismiss the counterclaims for *forum non conveniens*. (Doc 66).

## II. Discussion

"Under the doctrine of *forum non conveniens*, a district court may decline to exercise its jurisdiction when a foreign forum is better suited to adjudicate the dispute." *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019). "The central purpose of *forum non conveniens* is to ensure that the trial is convenient." *Id*. A defendant seeking dismissal for *forum non conveniens* must show that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011).

"In a typical case—i.e., one not involving a forum selection clause—a district court considering a *forum non conveniens* motion must evaluate both the convenience of the parties (the private-interest factors) and various public interest considerations." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079,

1085-86 (11th Cir. 2024). But where there's a valid forum-selection clause, its existence is "essentially dispositive in the *forum non conveniens* analysis." *Id.* at 1086. "This is so because when parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.*

MPS contends that Oberon's counterclaims all fall within their agreement's forum-selection clause, and thus they should be dismissed for *forum non conveniens*. (Doc. 66 at 8.) Oberon responds that MPS's claims *also* fall within the forum-selection clause. Consequently, by bringing them here, MPS waived its rights to enforce the forum-selection clause. (Doc. 74 at 8-9.) The Court agrees with Oberon.

Before digging into the merits, the Court notes that neither party has addressed what law applies here. Though the agreement says Italian law governs, the parties don't reference this when discussing waiver. (Doc. 66-1 at 21.) Nor have they provided authoritative statements of Italian law on the issue. So the Court applies "its own local law." *Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 882 (11th Cir. 1983); *see also Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321-22 (11th Cir. 2004); *Canon Lat. Am., Inc. v. Lantech (C.R.) S.A.*, 2011 WL 240684, at *5 (S.D. Fla. Jan. 24, 2011). Specifically, the Court applies state law when interpreting a forum-selection clause and when deciding whether a party has waived its right to enforce it.

4

*See Emps Ins. Of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) ("Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation . . . of such agreements."); *Steward v. Sage Software, Inc.*, No. 6:22-CV-12-WWB-EJK, 2022 WL 4537682, at *2 (M.D. Fla. Sept. 28, 2022) ("Courts in this circuit typically apply the state law standard to waiver of different contractual rights.").[2]

Florida courts interpret forum selection clauses according to the "plain meaning of the language used" and "look to dictionaries to determine the plain and ordinary meaning of words." *Peery*, 977 F.3d at 1069; *see also Golf Scoring Sys. Unlimited, Inc. v. Remedio*, 877 So. 2d 827, 829 (Fla. Dist. Ct. App. 2004). And under Florida law, "[a] party's contract right may be waived by actively participating in a lawsuit or taking action inconsistent with that right." *Klosters Rederi A/S v. Arison Shipping Co.*, 280 So. 2d 678, 681 (Fla. 1973); *see also Bland v. Green Acres Grp., L.L.C.*, 12 So. 3d 822, 825 (Fla. Dist. Ct. App. 2009). Pertinent here, a waiver occurs when a party brings

---

[2] The Court's approach would be the same even if federal law applied. *Compare In re FFS Data, Inc.*, 776 F.3d 1299, 1304 (11th Cir. 2015) ("[T]he plain meaning of a contract's language governs its interpretation under general contract principles."), *and Warrington v. Rocky Patel Premium Cigars, Inc.*, No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) ("A party has waived its right to arbitrate if, under the totality of circumstances, the party has acted inconsistently with the arbitration right[.]"), *with Peery v. City of Miami*, 977 F.3d 1061, 1069 (11th Cir. 2020) ("In Florida, the plain meaning of the language used by the parties controls as the best indication of the parties' agreement, so contract terms should be interpreted in accordance with their plain and ordinary meaning.").

claims falling within a forum-selection clause outside the specified forum. *See Solomon L. Grp., P.A. v. Dovenmuehle Mortg., Inc.*, 332 So. 3d 56, 59-60 (Fla. Dist. Ct. App. 2021); *Frontage Rd. Partners, LLC v. McMullen*, 934 So. 2d 629, 630 (Fla. Dist. Ct. App. 2006); *Carnival Corp. v. Booth*, 946 So. 2d 1112, 1115-16 (Fla. Dist. Ct. App. 2006).

MPS's claims fall within the agreement's forum-selection clause. As mentioned, that clause covers "all disputes arising out of or related to this Agreement, contractual, pre-contractual and extra contractual [in] nature." (Doc. 66-1 at 22.) "Extra contractual" means claims outside of or beyond the contract. *See* "Extra," MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/extra#dictionary-entry-4 (last visited Oct. 30, 2025); *see also Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 929 (7th Cir. 2015); *Budner v. Wellness Int'l Network, Ltd.*, No. 3:06-CV-0329-K, 2007 WL 806642, at *9 (N.D. Tex. Mar. 15, 2007). So properly construed, the forum-selection clause here includes *any* disputes between MPS and Oberon, no matter their nexus to the agreement. *Cf. Nubenco Enters., Inc. v. Inversiones Barberena, S.A.*, 963 F. Supp. 353, 373 (D.N.J. 1997) ("[T]he tort claims alleged by Nubenco do not specifically appear to arise out of either [agreement,] but rather out of extra-contractual events.").

It follows that by bringing its claims against Oberon here (a non-designated forum), MPS has waived its right to enforce the forum-selection

clause. *See Solomon Law Group, P.A.*, 332 So. 3d at 59-60; *see also Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687 (Fla. Dist. Ct. App. 2009) ("[A] party may waive his or her right to arbitration by filing a lawsuit without seeking arbitration."); *Frontage Road Partners,* 934 So. 2d at 630 ("[T]he action of filing a complaint and notice of lis pendens based on a contract without simultaneously requesting a stay and an order compelling arbitration waives that party's contractual right to arbitrate.").

MPS's motion to dismiss for *forum non conveniens* is premised on the forum-selection clause. But since that clause stands unenforceable, the motion must be (Doc. 66) **DENIED**.

**ORDERED** in Fort Myers, Florida on November 6, 2025.

Kyle C. Dudek
United States District Judge